**LAW OFFICE OF SAM A. SCHMIDT**
115 BROADWAY Suite 1704
NEW YORK, N.Y. 10006
(212) 346-4666
FACSIMILE (212) 346-4668
lawschmidt@aol.com

*Application granted. So Ordered.*
*[signature] USDJ 6-16-20*

Sam A. Schmidt, Esq.

June 15, 2020

Hon. Hon. Judge P. Kevin Castel
United States District Judge                **By ECF**
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re: *Early Termination of Probation*
*United States v. Alex Cabral*
14 Cr. 765 (PKC)

Dear Hon. Judge Castel:

Pursuant to 18 U.S.C. § 3583(e) and Fed.R.Cr.Proc. 32.1, I am requesting the termination of the balance of Alex Cabral's supervised release on the grounds that early termination of the remaining balance of supervised release is warranted by defendant's conduct and is in the best interest of justice.[1]   *OK*

On August 16, 2014 Alex Cabral was arrested with others in a Hobbs Act conspiracy resulting from a sting operation. On April 28, 2015, your Honor sentenced Mr. Cabral to fifty-two (52) months incarceration and three (3) years supervised release. He was sent to a halfway house and then released from custody on May 16, 2018 to began his term of supervised release.

---

[1] I am aware that Mr. Cabral forwarded a letter to your Honor dated March 16, 2020 requesting early termination of "probation." That was request was denied by your Honor in an order dated April 22, 2020 as providing an inadequate basis for the requested relief. I do not believe that there is any bar to making a new request, this time providing an adequate basis for such relief.

1

**LAW OFFICE OF SAM A. SCHMIDT**

I have spoken to his present probation officer, Sonales Gonzalez. She agreed that termination of supervised release is appropriate in this case. Ms. Gonzalez explained that she handles low intensity cases (L.I.C.). These are cases that have been transferred from regular supervision to low intensity supervision because the supervisee has proven himself to be of very low risk of any violation. Ms. Gonzalez further explained that she had spoken to Mr. Cabral's original supervising officer who told her that Mr. Cabral has been working, had no arrests, no positive tests for narcotics, has made all of his appointments and simply had no issues relating to compliance. As a low intensity supervisee, she would see Mr. Cabral one or two more times prior to his completion of period of supervised release. Ms. Gonzalez indicated that there were no reason to believe that there was any threat of Mr. Cabral violating any of his conditions of supervised release.

I have also spoken to AUSA Jessica Lonergan. She stated that her office does not oppose termination and that under the present circumstances she concurs with the probation officers recommendation.

If it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice, this court has the authority to terminate a term of supervised release after considering the factors set forth in section 3553 (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation. 18 U.S.C.§ 3583(e), §3564(c). As set forth in this letter, a consideration of these factors support this application.

As early as 2003, the Judicial Conference approved a policy that encouraged probation officers to seek early termination as soon as offenders were statutorily eligible as long as the offender had satisfied the conditions of supervision, had successfully reintegrated into the community, and did not pose a foreseeable risk to public safety. See *Early Termination of Supervision: No Compromise to Community Safety* by Laura M. Baber, James L. Johnson, Federal Probation, A Journal of Correctional Philosophy and Practice, Volume 77 Number 2, Office of Probation and Pretrial Services Administrative Office of the U.S. Courts.[2] This report states that the "Judiciary study of early termination of supervision of

---

[2] http://www.uscourts.gov/viewer.aspx?doc=/uscourts/FederalCourts/PPS/Fedprob/2013-09/no-compromise.html

**LAW OFFICE OF SAM A. SCHMIDT**

low-risk offenders shows that the practice not only saves money, it does so without compromising public safety."

> Early-term offenders save the probation and pretrial services system time when officers are no longer required to supervise them. Offenders receive early release from supervision an average of 15.7 months before their scheduled supervision term is set to expire. This, according to the report, allows districts to devote more resources to supervising and servicing offenders who are a greater risk to society.
>
> Early termination also saves money. In fiscal year 2012, the supervision of more than 7,000 offenders was terminated early, saving the Judiciary more than $7.7 million.
>
> "This practice promotes justice, conserves resources, and protects the public," said Judge Robert Holmes Bell, chair of the Judicial Conference Committee on Criminal Law.

*See* summary of report at
http://news.uscourts.gov/early-termination-supervision-cost-effective-and-safe.

### 3553(a)(1) - History and Characteristics of Alex Cabral

Since his transfer to a halfway house, before he was actually placed on supervised release, Mr. Cabral has worked. Presently he is working for a delivery and freight company as a licensed truck driver. As soon as Phase 3 of the pandemic begins, he will be sent to Boston by his employer to be trained and obtain his license to drive tractor trailer trucks. Mr. Cabral has been residing with his brother, a special education teacher, for the past two years. He has stability and a future.

### 3553(a)(2)(A), (B) and (C) - The Seriousness of the Offense, the Need for Adequate Deterrence, the Protection of the Public and Provide Just Punishment

Even though the conspiracy was the result of a reverse sting operation, we do not seek to minimize the seriousness of the offense. Importantly, Mr. Cabral's

**LAW OFFICE OF SAM A. SCHMIDT**

involvement was more limited than most of the participants. Both the PSR at paragraphs 14-22 of the PSR demonstrates, and footnote 1 of the plea agreement reiterates that not only was Mr. Cabral a late arriving minor participant, he never possessed the firearm, was not going to possess the firearm nor was to have any direct contact with the purported victims. Nevertheless, because of §2B3.1(b)(2)(C), Mr. Cabral's Guidelines offense level reflected the same 5 point increase than those who provided the firearms or were to possess and use the firearms to commit the offense.

### 3553(a)(2)(D) - To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.

Mr. Cabral does not require the assistance of the Department of Probation for educational, vocational or correctional treatment. He has been fully employed and requires no further assistance from the Department of Probation evidenced by his transfer to the low intensity supervision.

### 3553(a)(3), (4) and (5)

Not relevant to this application.

### 3553(a)(6) - The Need to Avoid Unwarranted Disparities

Early termination will not create any form of sentencing disparity. Alex Cabral has demonstrated

### 3553(a)(7) -The Need to Provide Restitution to Any Victims of the Offense.

Because this case was the result of a reverse sting operation, no restitution was required.

### Guide to Judiciary Policy - §30.10 Early Termination

Alex Cabral has met the criteria for assessing whether an eligible offender is an appropriate candidate for early termination. To be eligible the probationer must have served at least 18 months on supervision and had no significant violations.

4

**LAW OFFICE OF SAM A. SCHMIDT**

The criteria is:

    1. Stable community reintegration (e.g., residence, family, employment);

    2. Progressive strides toward supervision objectives and in compliance with all conditions of supervision;

    3. No aggravated role in the offense of conviction, particularly large drug or fraud offenses;

    4. No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);

    5. No recent arrests or convictions (including unresolved pending charges) or ongoing, uninterrupted patterns of criminal conduct;

    6. No recent evidence of alcohol or drug abuse;

    7. No recent psychiatric episodes;

    8. No identifiable risk to the safety of any identifiable victim; and

    9. No identifiable risk to public safety based on the Risk Prediction Index.

*Guide to Judiciary Policy*, Volume 8, Part E, The Supervision of Federal Offenders (Monograph 109). http://wvn.fd.org/pdf/Part_E%20109.pdf

    The Judicial Conference endorsement of early termination of supervised release or probation has the goal of permitting probation officers to spend their limited time efficiently and wisely and to save the taxpayers money while not jeopardizing public safety. If that purpose is to be achieved, a supervisee such as Alex Cabral, should have his supervision terminated.

**LAW OFFICE OF SAM A. SCHMIDT**

      Wherefore, it is respectfully requested based upon the individual conduct of Mr. Cabral and in the interest of justice that this court immediately terminate the remaining eleven (11) months of supervised release.

Sincerely yours,<br>
/s/<br>
Sam A. Schmidt

cc:    AUSA Jessica Lonergan by Email and ECF

       Sonales Gonzalez, USPO by Email

       Alex Cabral